IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| PATRICK RICHARD KRANIAK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | NO. 3:24-cv-00029 |
| MONTGOMERY COUNTY, et al., | ) | JUDGE RICHARDSON |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Patrick Kraniak, a pretrial detainee proceeding pro se, has filed a pro se Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP) (Doc. No. 3). Plaintiff has also filed a Motion for a Temporary Restraining Order (TRO) (Doc. No. 4) and a Motion to Appoint Counsel. (Doc. No. 5.)

The case is before the Court for ruling on Plaintiff's IFP application and motions, and for initial review of the Complaint under the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915A.

**I. APPLICATION TO PROCEED IFP**

A prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee, that application (Doc. No. 3) is **GRANTED** and a $350 filing fee is **ASSESSED**. The fee will be collected in installments as described below.

The warden of the facility in which Plaintiff is currently housed, as custodian of his trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a)

20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the Complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility in which Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. LEGAL STANDARD

The Court must conduct an initial review and dismiss the Complaint (or any portion thereof) if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also id.* § 1915(e)(2) (requiring dismissal "at any time" such determination is made in a case filed IFP). Review for whether the Complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting

2

Case 3:24-cv-00029 Document 6 Filed 01/16/24 Page 2 of 10 PageID #: 36

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although pro se pleadings must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the plaintiff must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, upon "view[ing] the complaint in the light most favorable to the plaintiff[.]" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009).

Plaintiff filed this action under § 1983, which allows a federal action against any person who, "under color of state law, deprives [another] person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (citations omitted); 42 U.S.C. § 1983. Accordingly, the Complaint must plausibly allege (1) a deprivation of a constitutional or other federal right, and (2) that the deprivation was caused by a "state actor." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

B. ALLEGATIONS AND CLAIMS

Plaintiff sues two Defendants: Montgomery County and Southern Health Partners, the private contractor that provides medical services to Montgomery County Jail inmates. (Doc. No. 1 at 2.) He alleges that he suffered injuries on May 15, 2023, after a "torn/ripped left sandal" (about which he had previously complained to guards) got stuck in the metal stairs he was descending, causing him fall down the stairs and injure his back, legs, and neck. (*Id.* at 3.) Plaintiff was taken to the hospital for medical care. He was discharged two days later and returned to the Jail. The following day, May 18, 2023, Plaintiff advised "Medical Provider Mrs. Oram and head nurse Kayla Harvey" that he was experiencing burning and tingling in his legs and severe pain in his back and neck, and that he was having trouble walking "even with the walker" that had been

provided to him. (*Id.* at 4.) He asked for a wheelchair, but this request was refused. (*Id.*) He further asked to be seen by a physical therapist (per the hospital's recommendation) but was told that the Jail did not have a physical therapist and did not transport inmates to outside physical therapy appointments. (*Id.*) Instead, Plaintiff was "given printed out exercises and told to exercise in [his] cell." (*Id.*) He was not assigned to a "handicap cell" because all such cells were occupied, though one handicap cell's occupants were not handicapped or disabled. (*Id.* at 4–5.)

On the morning of May 26, 2023, Plaintiff fell trying to get up from the toilet and struck his back on the toilet. (*Id.* at 5.) His back pain and the tingling/burning in his legs worsened after this second fall. (*Id.*) One nurse came to his cell after this incident but only gave Plaintiff his regular medications (which evidently included Tramadol for pain (*see id.* at 6))[1] and otherwise ignored Plaintiff's complaints of increased pain and tingling/burning. (*Id.*) After hours of pain so severe that Plaintiff was reduced to tears and begged for help, a guard called the nurse again. (*Id.*) Around 2:00 p.m., the same nurse who had seen Plaintiff earlier returned to his cell, examined his back, gave him an additional pain pill ("Immotrin," which the Court assumes is a reference to Motrin, a brand name for the drug ibuprofen),[2] and told him that nothing could be done about the burning and tingling sensations. (*Id.* at 5–6.)

On June 1 or 2, 2023, Oram and Harvey came to Plaintiff's cell, where he informed them that he was still in severe pain but his "pain medicine Tr[a]madol expired." (*Id.* at 6.) His request for a renewed Tramadol prescription was denied because Oram and Harvey believed it put him at

---

[1] Tramadol is a synthetic opioid. It "is a strong pain medication used to treat moderate to severe pain that is not being relieved by other types of pain medicines. https://www.drugs.com/tramadol.html (last visited Jan. 15, 2024).

[2] Motrin is a nonsteroidal anti-inflammatory drug "used to reduce fever and treat pain or inflammation caused by many conditions such as headache, toothache, back pain, arthritis, menstrual cramps, or minor injury. https://www.drugs.com/motrin.html (last visited Jan. 15, 2024).

4

risk of falling again. (*Id.*) Around that same time, Plaintiff advised Nurse Zayas that he was still having trouble getting around using his walker because it caused him extreme pain and unsteadiness. (*Id.*) Zayas issued a medical order for a wheelchair and had one delivered to Plaintiff. (*Id.* at 7.) The next day, Nurse Katy Dickson took the wheelchair away from Plaintiff, stating that Oram had discontinued the medical order for it because Plaintiff did not need it. (*Id.*)

Plaintiff had been kept on "medical lockdown" since his second fall, which kept him from being able to go to recreation or use the phone to contact his family, his attorney, or others. (*Id.*) When he asked why he had to remain on lockdown, Nurse Harvey stated: "You're on med lockdown because you are a fall-risk, and when you're threatening [a] lawsuit it makes us stop and tip-toe." (*Id.* at 8.) Plaintiff again asked for a wheelchair since he had been deemed a fall risk, and Oram told him that he had to be out of his neck brace first. (*Id.* at 9.) When Plaintiff was cleared from his neck brace requirement, he was issued a wheelchair and taken off medical lockdown. (*Id.*) But the seven weeks he spent on such lockdown "had already messed with [him] mentally." (*Id.*)

Since returning from the hospital following his first fall, Plaintiff had requested that Oram provide him with medication for the tingling and burning in his legs, but Oram stated that she did not like to issue medication for nerves. (*Id.* at 10.) Oram eventually relented and prescribed Cymbalta, an anti-depressant that she thought "might help" with Plaintiff's nerve symptoms. (*Id.*) Plaintiff took one Cymbalta pill, had an adverse reaction to it, and thus discontinued use of that medication. (*Id.*) When Oram told him that she would like to try a different medication, Plaintiff asked her whether it was "medicine made for nerves specifically," and Oram said "no but they might help." (*Id.* at 10–11.) Plaintiff then declined further treatment; he accuses Oram of preferring

5

to give him "random medication to cut Southern Health Partners' costs down" than to provide "medicine made for [his] condition." (*Id.* at 11.)

Plaintiff claims that the events recounted above resulted in a violation of his rights under the Eighth and Fourteenth Amendments. (*Id.*) He claims that his injuries have left him with severe back pain that prevents him from bending, twisting, or lifting his arms above his head. (*Id.* at 14.) Plaintiff seeks both an award of damages and injunctive relief (*id.* at 12–15), including a TRO. (Doc. No. 4.)

C. ANALYSIS

The Court construes the Complaint to assert a claim of deliberate indifference to serious medical needs. This claim arises under the Eighth Amendment, but because the Eighth Amendment does not apply to pretrial detainees, it is the Fourteenth Amendment that actually is the source of a state detainee's constitutional right to be free from deliberate indifference to serious medical needs. *Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 605 (6th Cir. 2022). To state a claim for a violation of this right, Plaintiff must allege that: (1) he had a sufficiently serious medical need; and (2) a defendant "acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty., Ky.*, 60 F. 4th 305, 317 (6th Cir. 2023) (internal citations and quotation marks omitted).

Even affording the Complaint a liberal construction and viewing its allegations in the light most favorable to Plaintiff, it does not support a plausible claim that Plaintiff's constitutional right to adequate medical care was violated at the Montgomery County Jail. Although the injuries he unfortunately sustained in his fall down metal stairs required a brief hospital stay and resulted in severe residual pain and other symptoms, he admits that he had a walker to use upon his return to

the Jail and was initially given the opioid Tramadol for his back pain. He also had a neck brace to wear and—after he fell a second time and his prescribed period in the neck brace ended—was provided with a wheelchair and additional pain medicine. While his complaints of nerve-related symptoms were initially not treated with additional medications, he was soon prescribed Cymbalta for those symptoms; the symptoms subsequently went untreated only because Plaintiff declined the offer of a replacement medication after he experienced side effects from the Cymbalta. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law," unless "the medical attention rendered [is] so woefully inadequate as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Despite his dissatisfaction with the care he received, Plaintiff plainly did not receive medical care "so woefully inadequate" as to be entirely negligible or suggestive of recklessness in the face of a known or obvious, unjustifiably high risk of suffering. He alleges inattention to his increased pain in the hours following his second fall, but also acknowledges that he was provided with his prescribed dose of pain medication that morning, and an additional dose of a different pain medication in the early afternoon. Moreover, although the time Plaintiff spent on "medical lockdown" with movement restrictions was distressing to him, those restrictions were allegedly imposed because he had demonstrated that he was at risk of falling. Plaintiff clearly would have preferred (and did in fact request) earlier issuance of a wheelchair, based on his belief that the use of a wheelchair after his first or second fall would have allowed him to avoid weeks in medical lockdown while eliminating the falling risk. But his preference for a different course of treatment is inapposite to the analysis of whether his constitutional rights were violated. *See Rhinehart v.*

*Scutt*, 894 F.3d 721, 740 (6th Cir. 2018) ("An inmate's disagreement with the testing and treatment he has received . . . does not rise to the level of an Eighth Amendment violation. Nor does a desire for additional or different treatment . . . suffice to support an Eighth Amendment claim.") (citations and internal quotation marks omitted). And the Court cannot reasonably infer from the allegations of the Complaint that Plaintiff's initial treatment with medications, a neck brace, a walker, and movement restrictions put him at an unjustifiably high risk of harm that his providers deliberately ignored. At best, these allegations support a claim of medical negligence that is not cognizable under § 1983. *See Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) ("[T]hat a [medical professional] has been negligent in diagnosing or treating a medical condition does not state a valid claim" under § 1983.).

Finally, even if the Complaint stated a plausible claim, it could not proceed against the only two Defendants named therein, Montgomery County and Southern Health Partners. These two Defendants can be held liable only if their respective policies or customs were the "moving force" behind Plaintiff's injuries. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (citations omitted); *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014). Plaintiff has not alleged the existence of any policy or custom of Montgomery County that caused (or even contributed to) his injuries. And the only allegation that could conceivably implicate a Southern Health Partners policy is Plaintiff's allegation that he was offered Cymbalta and another medication for his nerve symptoms, rather than a "medicine made for [that] condition[,] . . . to cut Southern Health Partners costs down." (Doc. No. 1 at 11.) Even ignoring the fact that Cymbalta is an antidepressant that is also used to treat nerve pain and other types of pain,[3] this conclusory reference to Southern Health Partners's alleged concern for drug costs—a reference devoid of any

---

[3] https://www.drugs.com/cymbalta.html (last visited Jan. 15, 2024).

indication that Plaintiff has reason to know of that entity's motives and how they manifested themselves in this particular case—is not sufficient to support that entity's liability under § 1983. *Cf. Bowers v. Livingston Cnty.*, 426 F. App'x 371, 372 (6th Cir. 2011) (dismissing claim against county because inmates did not identify a policy, but only "seem[ed] to argue" that an unofficial custom caused their injury).

In sum, the Complaint fails to state a claim upon which relief may be granted and will be dismissed on that basis.

### III. MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff's Motion for a TRO (Doc. No. 4) seeks his transfer to another facility due to the retaliatory harassment he has experienced "ever since the deputies of Montgomery County Jail have found out that [he] was working on this lawsuit." (*Id.* at 1.) Such retaliation includes verbal harassment, denial of access to legal documents, and refusal to provide postage for legal mail. (*Id.*)

In accord with the fact that a TRO movant bears the burden of justifying preliminary injunctive relief, *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014), a TRO motion must be accompanied by a memorandum of law. M.D. Tenn. L.R. 65.01(b). It must also be accompanied by a proposed order, *id.*, and by the pro se movant's written certification of "the efforts made to give notice of the request for a TRO [to the opposing party] and the reasons why notice should not be required" prior to entry of the requested TRO. M.D. Tenn. L.R. 65.01(c).

Plaintiff has not complied with these procedural requirements, nor is his TRO Motion substantively related to the medical-needs claim asserted in the Complaint. *See Montgomery v. Wellpath Medical*, No. 3:19-cv-00675, 2022 WL 1598253, at *2 (M.D. Tenn. May 19, 2022) (explaining that a motion for immediate injunctive relief should be denied when the substance of the motion is unrelated to the underlying claims of the lawsuit). Even if the TRO Motion were not

9

deficient in these ways, "[t]emporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Ciavone v. McKee*, No. 1:08-cv-771, 2009 WL 2096281, at *1 (W.D. Mich. July 10, 2009) (citing *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). In light of the Complaint's failure to state a plausible claim to relief, Plaintiff cannot demonstrate circumstances demanding the emergency relief he seeks in the TRO Motion.

## IV. CONCLUSION

In light of the foregoing, Plaintiff's Motion for TRO (Doc. No. 4) is **DENIED** and this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted. Plaintiff's Motion to Appoint Counsel (Doc. No. 5) is **DENIED** as moot.

The Court **CERTIFIES** that any appeal from this dismissal would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE